UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACUTEX INC., d/b/a HILITE
INTERNATIONAL,

        Plaintiff,

Civil Action No. 23-cv-12618
HON. BERNARD A. FRIEDMAN

vs.

GM de MEXICO S. de R.L. de C.V.,

        Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

I.    Introduction

      Hilite International commenced this breach of contract action against General Motors' Mexican subsidiary, GM de Mexico S. de R.L. de C.V. ("GM Mexico"). The complaint alleges that GM Mexico terminated its contract to purchase solenoid valves from Hilite for a newly developed transmission. Hilite filed suit in Wayne County Circuit Court. GM Mexico removed the case to this Court, invoking federal diversity jurisdiction. 28 U.S.C. § 1332(a).

      Before the Court is Hilite's motion to remand the case to state circuit court. (ECF No. 9). GM Mexico responded. (ECF No. 13). Hilite filed a reply. (ECF No.

14).  The Court will decide the motion without oral argument pursuant to E.D. Mich. 7.1(f)(2).  For the following reasons, the motion is granted.

II.     Background

    A.     *Factual History*

Hilite is a Michigan corporation located in Whitehall, Michigan. (ECF No. 9-6, PageID.280, ¶ 6).  Early in 2018, the company agreed to supply General Motors LLC and GM Mexico ("GM" collectively) with solenoid valves for a new 8-speed transmission under development.[1] (*Id.*, PageID.279, ¶ 2).  GM assured Hilite about the progress of the transmission's design and that the solenoid valves would be essential to the project's completion. (*Id.*).  But when GM learned that the transmissions would need to be redesigned, and that the associated engineering costs would "carry a seven-figure price tag," it discontinued the project. (*Id.*, ¶¶ 3-4).

Although Hilite spent nearly two years and a substantial sum of money developing the new valves, GM terminated its contracts with Hilite in March 2020 and refused to purchase any solenoid valves from the company. (*Id.*, ¶¶ 4, 75).

    B.     *Procedural History*

Hilite sued General Motors LLC and GM Mexico in Muskegon County Circuit Court initially. (ECF No. 9-2, PageID.250-65).  The complaint alleged causes

---

[1] A "transmission solenoid" is "an electro-hydraulic valve that controls fluid flow into and throughout an automatic transmission." *Transmission solenoid*, Wikipedia, https://en.wikipedia.org/wiki/Transmission_solenoid (last assessed Feb. 23, 2024).

2

of action for breach of contract, promissory estoppel, and common law indemnity. (*Id.*, PageID.262-65, ¶¶ 79-109). After the Muskegon County Circuit Court transferred venue to Wayne County Circuit Court, Hilite voluntarily dismissed GM Mexico from the lawsuit because it was unable to serve the company with process. (ECF No. 9-4, PageID.270-71; ECF No. 9-5, PageID.273-75).

Hilite later commenced this action against GM Mexico separately in Wayne County Circuit Court. (ECF No. 9-6, PageID.278-91). It served process on GM Mexico using alternative methods after obtaining leave from the state circuit court. (ECF No. 9-7, PageID.293-94; ECF No. 9-8, PageID.296-97). GM Mexico removed the case to the United States District Court for the Eastern District of Michigan based upon federal diversity jurisdiction. 28 U.S.C. § 1332(a). (ECF No. 1, PageID.1). Hilite now moves to remand the case to state circuit court, arguing that this Court lacks federal diversity jurisdiction because the parties are both Michigan citizens. (ECF No. 9, PageID.234, 242).

III.   <u>Legal Standards</u>

Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Any party opposing removal may file

3

a motion in federal district court to remand the case to state court. 28 U.S.C. § 1447(c).

When opposing a remand motion, the removing party bears the burden of demonstrating that the removal is proper. *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012). Any uncertainty as to whether the federal court possesses subject-matter jurisdiction over the removed action should be resolved in favor of remand. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006).

IV. <u>Analysis</u>

  A. *Overview of Diversity Jurisdiction*

Subject-matter jurisdiction in this case is premised upon the litigants' diversity of citizenship. (ECF No. 1, PageID.1, ¶ 1). Diversity jurisdiction requires that "(1) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and (2) there is complete diversity of citizenship between the disputing parties." *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2020); *see* 28 U.S.C. § 1332(a). "Complete diversity" exists where no defendant holds the same citizenship as any of the plaintiffs. *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020). Corporations are citizens of every state or foreign state where they are (1) incorporated, or (2) maintain their principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

4

Unincorporated entities – such as limited liability companies – are ascribed the citizenship of each partner, member, or sub-member. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187-92 (1990); *see also Akno 1010 Mkt. St. St. Louis Missouri LLC v. Nahid Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022) ("A limited liability company . . . has the citizenship of its members and sub-members."); *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (same). Only a corporation's citizenship is "determined independently" from its stakeholders' citizenship. *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 788 (7th Cir. 2014); *see also Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1105 (8th Cir. 2019).

> B. *The Comparison Test Demonstrates that Mexican Sociedades de Responsibilidad Limitada de Capital Variable Are Not Akin to American Corporations*

Determining the citizenship of foreign business entities is tricky. *See, e.g., Jet Midwest*, 932 F.3d at 1104; *Fellowes*, 759 F.3d at 788; *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684, 686 (7th Cir. 2011). International companies may display attributes that are difficult to classify according to standard American business forms. *Fellowes*, 759 F.3d at 788. "[L]inguistic and other differences between domestic and foreign business laws," as well as "the fact that other nations do not necessarily call entities that are in effect corporations by that name," present substantial hurdles to ascertaining the correct American equivalent.

5

*Jet Midwest*, 932 F.3d at 1105. Then add to the mix the absence of any relevant guidance from the United States Court of Appeals for the Sixth Circuit on this issue.

Other circuits, though, have adopted their own rules for assessing whether an international business form qualifies as a corporation for jurisdictional purposes. The most useful approach is the one that both the Seventh and Eighth Circuits employ. Denominated the "comparison" test, this framework juxtaposes the attributes of the foreign business entity under consideration with the hallmarks of domestic corporations to ascertain the entity's functional counterpart in American law.[2] *See Jet Midwest*, 932 F.3d at 1105; *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

The comparison test asks, among other things, whether the foreign business form (1) has perpetual existence, (2) is run by a board of directors, (3) issues tradable shares, and (4) is "treated as independent of its equity investors – who are neither taxable on its profits nor liable for its debts." *Lear Corp.*, 353 F.3d 583; *see also Jet Midwest*, 932 F.3d at 1105; *SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Ins. Ltd.*, No. 19-873, 2021 U.S. Dist. LEXIS 115530, at *15 (D. Md. Jun. 21, 2021). The foreign business entity must be "equivalent in *all legally material respects*" to

---

[2] The United States Court of Appeals for the Fourth Circuit seems to follow a modified version of the comparison test. *See Navy Fed. Credit Union v. Ltd. Fin. Servs., LP*, 972 F.3d 344, 354 n.5 (4th Cir. 2020) ("Only in special circumstances – such as when a foreign corporation lacks a clear domestic analogue – may we look to the structure of an entity to determine whether it classifies as a corporation.").

a domestic corporation to receive corporate status. *Lear*, 353 F.3d at 583 (emphasis added); *see also Jet Midwest*, 932 F.3d at 1105. Otherwise, the entity will be deemed an unincorporated entity whose citizenship tracks those of "each partner or member." *Delay*, 585 F.3d at 1005; *see also Carden v. Arkoma Associates*, 494 U.S. 185, 190 (1990); *Fellowes*, 759 F.3d at 788.

Mexican *Sociedades de Responsibilidad Limitada de Capital Variable* ("SRLCVs") – like GM Mexico – are not sufficiently analogous to domestic corporate forms to qualify as corporations. According to the Mexican legal sources appended to GM Mexico's response brief:

- Partners, as opposed to shareholders, own the equity in SRLCVs. (ECF No. 13-2, PageID.571, Art. 58; ECF No. 13-3, PageID.615).

- Partners, as opposed to shareholders, are the "highest authority in the company." (ECF No. 13-3, PageID.615).

- Management "is the responsibility of one or more managers" as opposed to a board of directors. (ECF No. 13-2, PageID.573, Art. 74).

- Partners receive "social parts" not shares. (ECF No. 13-3, PageID.614).

- Partners cannot hold more than "one social part." (*Id.*, PageID.572, Art. 68; ECF No. 13-3, PageID.614).

- Partners "cannot freely sell their ownership" interest. (ECF No. 13-3, PageID.613).

- Social parts are only transferable upon the agreement of the majority of partners. (ECF No. 13-2, PageID.572, Art. 65).

7

- And the Internal Revenue Service does not treat SRLCVs as corporations when assessing federal taxes. *See* 26 C.F.R. § 301.7701-2(b)(8)(i) (listing only the *Sociedad Anonima* as subject to federal corporate taxation).

All these characteristics (which GM Mexico never disputes) evidence the SRLCV's non-corporate status. *See Sanchelima Int'l, Inc. v. Wabash Nat'l Corp.*, No. 18-31, 2018 U.S. Dist. LEXIS 137292, at *4-5 (W.D. Wisc. Aug. 13, 2018) (reiterating that SRLCVs "are more similar to an American limited liability company, and therefore their citizenships are determined by the citizens of their members.").

GM Mexico disagrees with the foregoing analysis. Rather than the comparison test, the company urges the Court to adopt the "juridical person" test – the operative framework in the Fifth and Ninth Circuits for determining the citizenship of foreign business entities. *See Stiftung v. Plains Mktg., L.P.*, 603 F.3d 295, 298 (5th Cir. 2010); *Cohn v. Rosenfeld*, 733 F.2d 625, 629 (9th Cir. 1984). Using that rubric, courts ask a single, basic question: whether the entity is a "citizen or subject" of a foreign state whose identity is distinct from its equity stakeholders. *Stiftung*, 603 F.3d at 298; *see Cohn*, 733 F.2d at 629. And the answer would admittedly be that GM Mexico is a "juridical person" under Mexican law. Hilite does not contest that SRLCVs are distinct legal entities, with rights and liabilities

8

separate from their equity stakeholders, and that they may commence and defend legal actions on their own behalf (as GM Mexico has done here).

But the "juridical person" test suffers from a litany of flaws that curtail its utility. To begin with, the standard is over-inclusive. "Only corporations are entitled to" citizenship status based upon their states of incorporation and principal place of business. *Jet Midwest*, 932 F.3d at 1104; *see also Fellowes*, 759 F.3d at 788; 28 U.S.C. § 1332(c)(1). The "juridical person" test, on the other hand, confers corporate status upon a wide array of international business forms – including unincorporated associations – when that designation is inaccurate both on an organizational and operational level.

The application of the "juridical person" test would also result in the disparate treatment of analogous domestic and foreign business forms. Take, for example, the limited liability company. Although a domestic limited liability company carries the citizenship of "each partner or member," *Delay*, 585 F.3d at 1005, the scope of the "juridical person" test is so broad that it would undoubtedly assign corporate status to a functionally equivalent foreign business entity, thereby triggering the corporate citizenship rule for what is, in effect, an unincorporated international business form. Yet there is no legitimate basis "to establish a different rule for functionally identical entities established under other nations' laws." *Fellowes*, 759 F.3d at 789-90.

9

Then there is the matter of precedential integrity.  The Fifth and Ninth Circuits lifted the "juridical person" test from the United States Supreme Court's decision in *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933). *See Stiftung*, 603 F.3d at 298; *Cohn*, 733 F.2d at 628-29.  In *Russell*, the Supreme Court held that a Puerto Rican business entity known as the *sociedad en comandita* could be treated as a Puerto Rican citizen for purposes of jurisdictional citizenship because Puerto Rican civil law treated such entities as "juridical person[s]." *Russell*, 288 U.S. at 481.  But over the past ninety years, the Court subsequently confined *Russell* and "its juridical-entity approach" to the *sociedad en comandita* and "nothing else." *Fellowes*, 759 F.3d at 789 (citing *Carden*, 494 U.S. at 189-90); *see also* 13F Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Jurisdiction and Related Matters, § 3630 (3d ed.) (Apr. 2023 Update).

And ever since its ruling in *Carden* – that limited partnerships carry the citizenship of every partner – the Supreme Court appears to have rejected the "juridical person" test entirely. *See Carden*, 494 U.S. at 190 (stating that post-*Russell* precedent requires treating "common-law entities" and "*likely all entities beyond the Puerto Rican sociedad en comandita*" as "legal persons" only when taking a corporate form) (emphasis added).  So insofar as the "juridical person" test retains any vitality its precedential import is significantly diminished.

10

Piecing this all together, the comparison test demonstrates that SRLCVs are not akin to domestic corporations. Instead, they must be considered unincorporated entities that possess the citizenship of each partner or sub-partner. Because GM Mexico is an SRLCV its citizenship must be determined by this same standard.

C.   *GM Mexico's Michigan Citizenship Defeats Federal Diversity Jurisdiction*

The remaining portion of the jurisdictional citizenship analysis is straightforward. GM Mexico acknowledges in the notice of removal that its two partners are Controladora General Motors, S.de R.L. de C.V. and General Motors Overseas Distribution LLC ("GMOD"). (ECF No. 1, PageID.3, ¶ 6). GM Mexico does not contest that GMOD is a Delaware limited liability company whose sole owner is General Motors Holdings LLC. (ECF No. 9-11, PageID.310-11, ¶ 7). Nor does it contest that General Motors Holdings LLC's sole owner is General Motors Company, a Delaware corporation with its principal place of business in Wayne County, Michigan. (*Id.*).³

---

³ The source of this information is an affidavit that General Motors Company Corporate Secretary Rick Hansen submitted in another case before the United States District Court for the Eastern District of New York. (ECF No. 9-11, PageID.309-12). *See Rudd v. City of Norton Shores*, No. 22-1229, 2023 U.S. App. LEXIS 14474, at *22 (6th Cir. Jun. 8, 2023) (considering an affidavit submitted in "another case"); *see also Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 913 n.4 (6th Cir. 2002) (opining that an "affidavit from another case" could have "support[ed] a claim that there was no injury in fact" in the present case).

Therefore, the sole owner of one of GM Mexico's sub-partners is General Motors Company – a Michigan citizen.[4] *See GM Co. v. Dinatale*, 705 F. Supp. 2d 740, 745 (E.D. Mich. 2010) ("General Motors Company's principal place of business is in Michigan, and it is therefore a citizen of this state."). And that means GM Mexico is a citizen of Michigan as well. *See Delay*, 585 F.3d at 1005 (restating the "general rule" that "all unincorporated entities . . . have the citizenship of each partner or member.").

Because Hilite and GM Mexico are both Michigan citizens the parties lack the complete diversity of citizenship necessary to sustain federal diversity jurisdiction. *See Miller*, 949 F.3d at 990. As a result, this case must be remanded to state circuit Court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

[4] On the other side of the partnership, GM Mexico concedes that Controladora General Motors, S.de R.L. de C.V.'s ("Controladora") ultimate parent company is General Motors Company. (ECF No. 2-1, PageID.34). Although it is unclear whether General Motors Company holds an equity stake in Controladora (either directly or indirectly), the burden of disproving that inference rests with GM Mexico. *See Paul*, 701 F.3d at 520 ("the removing party [has] the burden of establishing federal subject matter jurisdiction.").

12

*D. Costs*

Hilite lastly argues that it is entitled to "just costs" and "actual expenses, including attorney fees," stemming from GM Mexico's removal of this case from state circuit court. 28 U.S.C. § 1447(c).

A fee award is typically unjustified so long as the removing party has "an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *see also Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 523 (6th Cir. 2012) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.") (citation and internal quotation marks omitted).

Nonetheless, "a district court's discretion to award or deny fees under § 1447(c) involves more than an on-off switch that is solely dependent on the objective reasonableness of the removal decision." *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1060 (6th Cir. 2008). District courts "retain [the] discretion to consider whether unusual circumstances warrant a departure from the [objective reasonableness] rule in a given case." *Martin*, 546 U.S. at 141.

The Sixth Circuit distilled these principles into a two-part test. Before awarding fees, courts must first determine whether the removing party had an objectively reasonable basis to remove the case. *A Forever Recovery, Inc. v. Twp. of*

13

*Pennfield*, 606 F. App'x 279, 281 (6th Cir. 2015).  Only when such grounds are present will courts evaluate whether "unusual circumstances" justify an award. *Id.*

Here, GM Mexico possessed an objectively reasonable basis to remove this litigation to federal court because the appropriate standard for ascertaining the citizenship of a Mexican SRLCV remains an open question in this circuit.  Nor are there "unusual circumstances" warranting an assessment of fees and costs. *See id.* So Hilite's request for costs and expenses under section 1447(c) is denied. Accordingly,

IT IS ORDERED that Hilite's motion to remand the case to state circuit court (ECF No. 9) is granted;

IT IS FURTHER ORDERED that GM Mexico's pending motions (ECF Nos. 7-8, 16) are denied without prejudice as moot; and

IT IS FURTHER ORDERED that the Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: February 26, 2024
    Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR U.S. DISTRICT JUDGE